## GRAND-ISLE COUNTY, JANUARY TERM, 1828.

*Reuben Clapp*, administrator *de bonis non* of *Alexander Gordon,*
vs. *Ephraim Beardsley*.

That the County Court do right to compel the defendant to proceed to trial upon a declaration amended by order of the Supreme Court, while the cause was pending there.

That a deed of twenty-eight acres off from lot No.——— adjoining, does not create a tenancy in common of the whole lot.

That plaintiff *is not regularly administrator* must be pleaded in abatement, and cannot be urged under the *general issue*.

That an administration *de bonis non*, granted by the Probate Court of a district other than the one in which administration was first granted, but to which the town where the deceased resided has been attached by a later statute, is not void, but only voidable on appeal.

That a purchase by an administrator of an assignment of a mortgage, given by his intestate, enures for the benefit of the estate. Such assignment cannot avail the defendant who purchased under it with a full knowledge of all the facts.

That the above is the case unless it appear that the administrator purchased with his own funds when he had no assets which made it his duty to purchase for the benefit of the estate.

That the defendant claiming to hold in his own right, is not entitled to notice to quit, though he is in under a defective title derived from the deceased, or his first administrator.

THIS was an action of ejectment for land in *Grand-Isle*, in said county ; the only description of which, in the original declaration, was " thirty-six acres of the south east corner of the first division

Grand Isle, Jan. 1828. } "lot drawn to the right of *John Wood.*"
Clapp, adm. vs. *Beardsley.* } At a former term of this court, in which a
new trial was granted in said cause, the plaintiff made the fol-
lowing motion to amend his declaration, to wit :

"*Supreme Court, Grand-Isle County, January Term,*1827.

"And now the plaintiff moves for liberty to amend his said de-
"claration by erasing the last line on the first page and the first
"and second lines on the second page, and substituting therefor
"the following : 'being a part of lot two hundred seventy-seven
"'of the first division, laid and drawn to the original right of *John
*"'Wood,* and bounded and described as follows, to wit : beginning
"'on the lake shore at the south east corner of said lot, thence
"'westerly on the line of said lot ninety-six rods, thence north-
"'wardly at right angles with said first line sixty rods, thence east-
"'wardly parallel with said first line to the lake shore, then south-
"'wardly on the shore of the lake to the place of beginning,contain-
"'ing thirty six acres of land, lying in the south east corner of said
"'lot of which tract.'        By WETMORE & ADAMS."

This motion was granted without terms, as no objection had
ever been made to the declaration by the defendant; but the difficul-
ty was suggested by the court, after several trials upon the actual
merits. The amendment was made accordingly. There was
another trial in the County Court, and the following exceptions
allowed, to wit :

"*Grand-Isle County Court, September Term,* 1827.

"Ejectment for lands in *Grand-Isle,* being a part of lot No.
"277, drawn to the original right of *John Wood,* as by the de-
"claration appears. Plea *not guilty,* and issue joined thereon.

"On the trial of the issue the defendant objected to the plain-
"tiff's proceeding on the amended declaration filed in the case,
"on the ground that it did not conform to the order of the court
"allowing it; contending that it appeared from the original decla-
"ration, the order of the court, and the plan of the town of *Grand-
*"*Isle,* which are made a part of this case, that the amended de-
"claration contained and described land not included in the ori-
"ginal declaration. He further insisted and offered to show, that
"he had been in adverse possession of the land described in the
"amended declaration fifteen years before the same was filed.

"The court overruled the objection, and ⎰ Grand-Isle, Jan. 1827.
"ordered the trial to proceed on the a- ⎱ Clapp, adm. vs. Beardsley.
"mended declaration. The plaintiff offered in evidence letters
"of administration to him on the estate of Alexander Gordon,
"granted May 24, 1813, with a certificate of the Judge of Pro-
"bate thereon, that the administrator had given bonds, and
"was duly sworn. The defendant objected to the evidence
"thus offered on the ground that the Judge of Probate had no
"power to grant letters of administration to the plaintiff, and in-
"sisted that it did not appear that the plaintiff had given bonds
"and taken the necessary oaths, and offered to prove that the
"certificate was made in court by the Judge of Probate when his
"record was absent. This proof was excluded, and the letters
"of administration and certificate were admitted.

"The plaintiff then shewed a title in fee to lots No. 276, 277,
"and 278, in Grand-Isle, including the land in question, in Al-
"exander Gordon, in his lifetime, and that he died in 1802, seiz-
"ed and possessed of the same, and that the defendant at the
"commencement of this suit, was and still is in possession. of the
"land in question.

"The defendant on his part, produced and read in evidence a
"deed from Alexander Gordon, to John Knight, and Elijah
"Hyde, dated Nov. 14, 1800, of the first division lots of Thom-
"as Tolman, and Elijah Herrick, and twenty-eight acres of the
"first division lot laid to the original right of John Wood, adjoin-
"ing; also a deed from John Knight, and Elijah Hyde, to the
"defendant, dated July 8, 1807, of all their right, title, and inter-
"est in and to one equal undivided half of the first division lots
"of Thomas Tolman, Elijah Herrick and John Wood. The
"defendant insisted that he was a tenant in common with the
"plaintiff of the whole of lot No. 277, and that the plaintiff could
"not recover without shewing an actual ouster, or something tan-
"tamount thereto.

"The plaintiff thereupon produced and read a deed of mort-
"gage from Alexander Gordon to Benjamin Boardman, dated
"June 6, 1800, of thirty-six acres of lot No. 277, described as
"beginning at the south east corner of the lot, giving the bounda-
"ries and describing the lands in question, and proved that the
V

" thirty-six acres were inclosed and sep-
" arated from the other part of the lot
" by a fence, as early as 1798 or 1799.　The court decided
" that the parties were not tenants in common, and overruled the
" defendant's objection.

　" The defendant then introduced and read a deed from *Ben-*
"*jamin Boardman* to *Philo Berry,* dated Sept. 25, 1805, and
" recorded July 9, 1807, assigning to *Berry* the mortgage given
" by *Alexander Gordon* to *Boardman,* and also a deed from *Phi-*
" *lo Berry* to the defendant, dated July 8, 1807.

　" The plaintiff thereupon produced and read letters of adminis-
" tration to *Philo Berry* and *Polly Gordon,* on the estate of *Al-*
" *exander Gordon,* granted Oct. 7, 1802, and it was admitted by
" the parties that the said *Philo* and *Polly* were duly appointed
" and qualified, and took upon themselves the trust of administra-
" tors as aforesaid.　The plaintiff also produced and read the re-
" cords of the Court of Probate for the district of Grand-Isle,
" which the parties consented should be received as legal evi-
" dence, from which it appeared that the inventory of the real and
" personal estate of the said *Alexander Gordon,* amounted to
" $6146,25, that the amount of debts allowed by the commission-
" ers against the estate, including the debt to *Boardman* of $688,
" 69, secured by the mortgage aforesaid, was $3005,79, and
" that there had been assigned to the widow, out of said estate
" in personal property, the sum of $109,36.　It was admitted by
" the defendant that he went with the said *Berry* to the town
" clerk's office and procured to be recorded all the deeds before
" and herein after mentioned, which were recorded July 9, 1807,
" and also the order of the Judge of Probate herein after men-
" tioned, directing the sale of the real estate of the said *Alexan-*
" *der Gordon,* and that he knew that said *Berry* was administra-
" tor on said estate.　Whereupon the court decided that the defend-
" ant acquired no title as against the plaintiff, under the mort-
" gage from *Alexander Gordon* to *Benjamin Boardman.*

　" The defendant then produced and read a deed from *Philo*
" *Berry* to *John Knight* and *Elijah Hyde,* dated December 10,
" 1807, a deed from *John Knight* and *Elijah Hyde* to *Ebenezer*
" *Hatch,* dated March 3, 1808, and a deed from *Ebenezer Hatch,*

" to the defendant dated Nov. 20, 1812.

" The defendant also read in evidence
" a deed from *Philo Berry* and *Polly Gordon*, administrators of
" *Alexander Gordon*, to *Asa Robinson*, dated September 6, 1805,
" and recorded July 9, 1807, and a deed from *Asa Robinson* to
" *Philo Berry*, dated June 1, 1807.    The defendant further of-
" fered in evidence an order of the Judge of Probate for the dis-
" trict of *Chittenden*, purporting to be an order of sale of the real
" estate of *Alexander Gordon*, dated ———, which was objected
" to, but was permitted to be read ; and also introduced a witness
" who testified that a large share, but could not state how much,
" of the personal property inventoried as the estate of *Alexander*
" *Gordon*, consisted of notes and demands of little or no value,
" and that the defendant entered into possession of the premises,
" sued for, in 1807, and had continued in possession ever since.

"The defendant insisted that from the deeds introduced as a-
" foresaid, it appeared that the principal part of the real estate, in-
" ventoried as the property of *Alexander Gordon*, did not, in fact,
" belong to him ; that from the deeds thus introduced, and the
" testimony in relation to the personal property, it appeared that
" the estate was, in fact, insolvent ; and, therefore, it sufficiently ap-
" peared that it was necessary to sell the real estate for the pay-
" ment of the debts.    He further insisted that he was a *bona fide*
" purchaser for a valuable consideration, and that the sale made
" by *Philo Berry* and *Polly Gordon*, under the order of the Judge
" of Probate, had been acquiesced in for nearly fifteen years, and
" that, therefore, it should be left to the jury to presume that the or-
" der of the sale was legally made, and that all the requisites to
" render the sale valid had been complied with ; and he request-
" ed the court so to charge the jury.

" Defendant also insisted, that from the evidence introduced it
" appeared that *Philo Berry*, at the time he took the assignment
" of the mortgage deed from *Benjamin Boardman*, had no assets
" in his hands belonging to the estate of *Alexander Gordon*, and
" if so, that *Berry* had a right to purchase the premises, and take
" an assignment in his own right, and did thereby acquire a legal
" title in himself ; and he requested the court so to charge the jury.

" He also contended that he had shewn a good title in himself

Grand-Isle, January, 1828.  ) " by deeds, and by the statute of limita-

Clapp, admr. vs. Beardsley.  ) " tions, at least, to a part of the premises
" described in the amended declaration; and requested the court
" so to charge the jury.

  " But the court refused to charge the jury as thus requested
" by the defendant; and the jury, under the direction of the court,
" returned a verdict for the plaintiff.   To which several opinions
" of the court, and refusal to charge the jury as requested, as
" aforesaid, the defendant excepts; and the several records, deeds,
" papers, and plan of the town of *Grand-Isle*, herein referred to,
" are made a part of this case.

  " Allowed and signed in court, and ordered that execution be
" stayed.            " SAMUEL PRENTISS, *Chief Judge.*

              " MELVIN BARNES, JR. *Assistant Judge.*"

  Argument for the defendant.    1. The order of court could
not have been intended to give the plaintiff leave to amend his
declaration so as to describe a different piece of land from that
mentioned in the original.    But the plaintiff, not regarding the or-
der of the court, has amended his declaration by describing thirty
six acres of land lying on the *south* side of the lot, instead of des-
scribing thirty six acres lying in the *south east* corner.    This lot
is in form a parellelogram, and allowing to the term *south east* cor-
ner its most extensive signification, the first declaration could only
embrace land included in a triangle—thereby including a piece
of land which was not included in the orignal declaration, and to
which the defendant had a complete title by the statute of limita-
tions, before the filing of the amended declaration.    Therefore,
the decision of the County Court, compelling the defendant to go
to trial on the amended declaration, and excluding the operation of
the statute of limitations, as to the piece of land not included in
the original declaration, was incorrect.

  2. The deed *Gordon* to *Knight* and *Hyde*, dated Nov. 14,
1800, conveyed to them the original rights of *Thomas Tolman* and
*Elijah Herrick*, and twenty eight acres off from the first divison
lot laid to the original right of *John Wood*, adjoining.    This deed,
not having located the twenty eight acres in any particular part
of the lot, laid to the right of *John Wood*, makes *Gordon*, and
*Knight* and *Hyde* tenants in common through the whole lot.—

The term *adjoining* refers to the lot ⎰
laid to the right of *John Wood*, and ⎱
was intended to show that said lot was adjoining the lots laid
to the rights of *Herrick* and *Tolman.* But ̧if the term *adjoin-
ing* refers to the twenty eight acres, and was intended to show
that the twenty eight acres lay adjoining the lots laid to the rights
of *Tolman* and *Herrick*, still the plaintiff would fail in making out a
location of the land : for by examining the plan of the town it will be
perceived that these three lots are so located that this twenty eight
acres might be laid adjoining the lots laid to the rights of *Tolman* and
*Herrick*, yet in so many various ways, & conveying so many different
pieces of land, that the deed, considering it as conveying a piece of
land in severalty, would be void for uncertainty.  It follows conclu-
sively, that the deed is void, or it convey san undivided moity of the
lot in question ; and̗the rule of law is, that when an instrument is so
written that two constructions can be put upon it, one of which would
make it void, and the other valid, that construction is to prevail
which would support it.—1 *Sw. Dig.* 229.  The fact that this
lot was divided by a fence two years prior to the date of *Board-
man's* deed cannot in any way explain or controul the effect of
this deed.  If the plaintiff relied on a division in fact, and to con-
troul the operation of this deed, introduced parole evidence to
shew that the lot had been divided by a fence in 1798 or 1799, this
question should have been submitted to the jury.  The Court
could not, on parole evidence, undertake to determine whether
there was or was not a division in fact.  Therefore, this verdict,
being for a piece of land in severalty, cannot be supported.

3. *Alexander Gordon* was an inhabitant of the town of *Grand
Isle* at the time of his decease in September 1802, at which time
the towns of *South Hero* and *Grand Isle* were a part of the Pro-
bate district of *Chittenden.*  The act authorising Courts of Pro-
bate to grant letters of Administration on intestate estates, directs
that "after the decease of any person intestate, the Judge of Pro-
" bate for the district wherein such person was last an inhabitant
" shall grant Administration, &c."  This act gives to the Probate
Court for the district of *Chittenden* the right of granting letters of
administration on the estate of *Gordon.—Ed. of Laws of* 1808,
*p.* 129, *s.* 25.  The act authorising the Court of Probate to grant

Grand-Isle, January, 1828. ⎱ letters of administration *de bonis non*
*Clapp*, adm. vs. *Beardsley*. ⎰ in certain cases therein enumerated,
expressly confines the granting of such letters to the Court
of Probate who granted the first.—*Ed. of Laws of* 1808, *p.* 134,
*s.* 37.    *Gordon* was never an inhabitant of the district of
*Grand Isle*, but was an inhabitant of the district of *Chittenden*
at the time of his decease.    The enquiry then is what authority had
the court of Probate for the district of *Grand Isle* to grant letters
of Administration *de bonis non* on the estate of *Gordon*?    If it
had any authority, it must be by virtue of the act annexing the
towns of *Grand Isle* and *South Hero* to the Probate District of
*Grand Isle*.    This act does not take away any jurisdiction or con-
troul which the Court of Probate for the District of *Chittenden* had
acquired over testate or intestate estates in either of those towns
before the passing of the act.    It is a well settled principle that the
mere alteration of the jurisdictional lines of a county, or Probate
District, does not take away the jurisdiction of the County or Pro-
bate Courts over any causes or matters that are pending before
them at the time of such alteration.    In this case the Probate
Court for the District of *Chittenden* had granted letters of ad-
ministration on the estate of *Gordon* before the passing of this
act, and this subject was then properly pending in that court.    It
remains for the plaintiff's counsel to show what event has taken
the jurisdiction over this estate from the Probate Court for the
district of *Chittenden* and given it to that of *Grand Isle*.    If the
Court of Probate for the district of *Grand Isle* had not jurisdiction
of the subject matter, these letters of Administration to the plain-
tiff are void.

4.    The defendant has a title to the premises in question by
virtue of the deeds *P. Berry* and *P. Gordon*, administrators on the
estate of *A. Gordon*, to *Asa Robinson*, and from *Robinson* to him-
self through *mesne* conveyances.    The order of the Court of Pro-
bate directing the sale of *Gordon's* real estate was good on the
face of it.    The Court of Probate had jurisdiction of the sub-
ject matter, therefore this order was sufficient to justify *Robinson*
in purchasing the estate, and cannot be set aside so as to defeat
the rights of a *bona fide* purchaser.—1 *Con. Rep.* 467, *Brown* vs.
*Lanman*.—7 *Mass* 292, *Leverett* vs. *Harris*.—*Ed. of Laws of*

1808, *p.* 140, *s.* 54-5.—13 *Johns.* 97, { Grand-Isle, January, 1828.
*Jackson* vs. *Rosevelt.* It appears that } *Clapp,* adm. vs. *Beardsley.*
the estate of *Gordon* was in fact insolvent, and that it was neces-
sary to sell the real estate of *Gordon* for the payment of
debts. The order of the Court of Probate directing the sale of
*Gordon's* estate was issued Aug. 6, 1805. The deed from *P.*
*Berry* and *P. Gordon,* on the sale of said estate in pursuance of
said order, was executed on the 6th day of Sept. 1805,—sixteen
years before the commencement of this suit. This evidence,
taken in connection with the order of the Court of Probate, di-
recting the sale of *Gordon's* real estate, the lapse of time since
said order was made, and the lands sold, the inaccurate and care-
less manner in which Courts of Probate kept their records at so
early a period, the length of time during which the land has been
in possession of a *bona fide* purchaser for a valuable consideration,
ought to have been submitted to a jury to presume that the order
and sale and all the legal requisites to make a valid conveyance,
were complied with.—3 *T. R.* 159, *Read* vs. *Brookman.*—1 *Bos.*
*& Pul.* 400, *Holcroft* vs. *Heel.*—3 *Mass. R.* 399, *Gray* vs.
*Gardner.*—2 *Con. R.* 27, *Bunce* vs. *Wolcott.*—*Id.* 607, *Sum-*
*ner* vs. *Child.*—10 *Mass. Coleman* vs. *Anderson.*

The defendant has a valid title at law to the premises in ques-
tion by virtue of the mortgage deed, *Gordon* to *Boardman, Board-*
*man* to *Berry* and *Berry* to defendant.—12 *Mass.* 30, *Hills* vs.
*Elliot.* It is insisted by the plaintiff that *Berry* acquired no right
in himself by the assignment of the mortgage from *Boardman* to
him, and that this purchase was in contemplation of law, a pay-
ment of the mortgage money, and enured for the benefit of *Gor-*
*don's* estate. The position thus assumed by the plaintiff cannot
be supported.—10 *Johns.* 480, *Jackson* vs. *Minkler.* The evi-
dence offered by the defendant shows conclusively that *Berry*
had no assets in his hands at the time he purchased and took to
himself an assignment of the mortgage from *Boardman* ; at all
events, he offered legal evidence tending to prove that fact ; and
the question whether *Berry* had or had not assets should have
been submitted to the jury. If *Berry* had assets, his purchase
enured for his own benefit, and the defendant has all the rights
of the assignee of the mortgagee in possession.—*Tol. on Ex.*

Grand-Isle, January, 1828.  164.—*Office of Ex.* 109. If *Berry*
Clapp, adm. vs. Beardsley. had assets, and the estate was in-
solvent, it was not his duty, as administrator, to pay off this
incumbrance. If he had done so, he might have been liable for
a *devastavit*; and the court will not presume that he did any act,
as administrator, inconsistent with his duty.—2 *Con. Rep.* 350,
*Findlay* vs. *Hosmer.* If it was not the duty of *Berry* to pur-
chase in this incumbrance for the benefit of the estate, he had a
right to purchase for his own benefit, and had all the right of an
assignee. If it was the duty of *Berry* and *Polly Gordon* to pay
off this incumbrance, as administrators on the estate of *Gordon,*
yet if *Berry,* instead of paying off the incumbrance, took an as-
signment to himself, he has the legal estate; and although he
might properly be considered as a trustee by a court of equity,
at law, the legal title must prevail.—14 *Johns.* 407, *Jackson* vs.
*Walsh.*

6. At all events, if neither of the titles set up by the defendant
are sufficient to vest in him an estate in fee, yet the deeds from
*Berry* to defendant gave him the lawful possession of the premises,
and he is to be considered in no worse light than as a tenant at will
or by sufferance, and is entitled to notice to quit, or at least, a
demand to give up the possession.—1 *Sw. Dig.* 91.—11 *East,*
55, *Foley* vs. *Wilson.*—13 *Id.* 210, *Right* vs. *Beard.*—4 *T. R.*
680, *Goodlittle* vs. *Hurbert.*

Argument for the plaintiff. The Judge of Probate had power
to grant the letters of administration to the plaintiff in this case.—
It was within his district at the time of the appointment when
*Gordon* died. The giving the bonds is a presumption of law arising
from the existence of the letters of administration. The law did
not require the administrator to be sworn. The defendant as
owner of the twenty eight acres was not tenant in common with
*Knight* and *Hyde*; and besides, a practical division had been made.
The assignment of *Boardman* to *Berry* has been already considered
by this court, and they have decided the legal effect of it—that it
enures to the benefit of the estate. This court have also deter-
mined that nothing passed by the deed of *Berry* and *Polly Gordon,*
under the order of the Court of Probate for the district of *Chitten-
den.* The case discloses no testimony of a valuable consideration

for the sale from *Boardman* to *Berry* ; ⎰ Grand-Isle, January, 1828.
but it does appear that defendant pur-⎱ *Clapp*, adm. vs. *Beardsley.*
chased with full knowledge of all pre-existing facts.—1 *Chit.*
485.—2 *Phil. Ev.* 290–1. It does appear that there were assets
to a large amount in the hands of *Berry*, and the court will also
take notice of the rents and profits accruing while the estate was
in *Berry's* hands.

·The court had an intermission, and were ready to deliver
their opinion, without further argument on the part of the plaintiff.

HUTCHINSON, J. delivered the opinion of the court. Several
exceptions were taken at the trial of this cause, which are now to
be disposed of.

The first is to the County Court's compelling the defendant to
proceed to trial on the amended declaration. We deem this to be
right in the County Court, whether the allowance of the amend-
ment were right or wrong. The action was regularly pending be-
fore the Supreme Court when they allowed the amendment, and
they had power to allow all proper amendments in furtherance of
justice ; and it was their duty thus to allow them. After the a-
mendment was made the cause was sent to the County Court for
a jury-trial. It would hardly have been decorous, to say the least
of it, for the County Court to refuse to try such issues as were
sent to them from the Supreme Court for trial, especially for them
to judge over again a question decided by the Supreme Court on
the propriety of any particular amendment. Furthermore, we dis-
cover no good reason why the amendment was not correctly allow-
ed. It is true, the piece described in the new declaration is not in
any exclusive sense, nor in the most appropriate sense, in the
south east corner of the lot. Yet it was there, as it was in the
south west corner. The south east corner was the place of be-
ginning. And the deeds, describing the land as in the amended
declaration, had been read without objection on the trials before
the amendment. And the whole dispute had been about the title to
this particular piece of land. The difficulty was not that the first
declaration contained no land, for it necessarily contained thirty-six
acres. The difficulty was, it was defective in not giving the par-
ticular boundaries to which the plaintiff intended to make title.

The defendant's counsel endeavour to attach importance to
W

Grand-Isle, January, 1828. } to this amendment from its possible ef-
Clapp, adm. vs. Beardsley. } fect with regard to the statute of limita-
tions, and the defendant's claim to hold as tenant in common.
Probably, if an amendment brought upon the record a claim for
land, that by no construction could be considered within the
original declaration, the statute would run till the amendment
made ; but otherwise, where the land, as in this case, may be
within the original declaration. In such case,' supplying the de-
fect by a particular description will operate as if so made in the
beginning.

We discover no tenancy in common in the case. The deed
from *Gordon* to *Knight* and *Hyde*, under which the defendant
claims, conveys " one certain tract or parcel of land, &c. the first
" division lots of the rights of *Thomas Tolman* and *Elijah Her-*
" *rick*, and twenty-eight acres off from the lot laid to the right of
" *John Wood*, adjoining." It appears by the map that said Tol-
man-lot lay north of the Wood-lot, and said Herrick-lot lay
west of the Wood-lot and Tolman-lot. Now this deed conveyed
no right throughout the Wood-lot, but only twenty-eight acres to
come off some where. It might come off from the north side, or
the west side, and be adjoining : or the word *adjoining* might refer
to the whole lot of *Wood's* right, being adjoining the other lots.
In which case it might be taken from any part then owned by the
grantor. But the most natural construction is, that the twenty-
eight acres must adjoin one of those other lots ; more especially,
as otherwise, the whole would not be in one piece or parcel as de-
scribed in the deed. But, if the deed of the twenty-eight acres
did contain the land now in dispute, it would convey no title un-
less a mere equity of redemption, because *Gordon*, in the prece-
ding June, had mortgaged to *Boardman* the same land described
in this amended declaration. We must endeavor in some way,
to ascertain the meaning of the parties in their contract. What
they intended to convey might be within the description they
have given. As this description is, we may resort to evidence
*aliunde*. Now it appears from the case that this piece now in dis-
pute had been fenced off from the lot in 1798–9, and conveyed to
*Boardman* in June 1800. Hence it would be wrong to presume
an intention in November, 1800, to convey twenty-eight acres of

this 36 acres, when *Gordon* at the same    
time owned, of the same lot, sufficient    
that lay upon the north side and the west side to make the twenty-eight acres, and much more.

Upon the whole we consider the deed of the twenty-eight acres as not comprising any of the land now in dispute.

2. We come to the question of the plaintiff's administration and his right to sue. We have had no special difficulty except upon this point, and not so great upon this as to trouble the plaintiff's counsel upon it. It is a question with the court, whether this can arise upon the merits of the case, or whether it must not be pleaded in abatement? From the reason of the thing it ought to be pleaded in abatement: for it is an objection to the plaintiff's representing the deceased, while the general issue to the declaration most technically calls in question the right of the deceased to *oust* the defendant from the premises. The general rule is that an objection to the person of the plaintiff, or whether he or some one else shall bring the action, must be pleaded in abatement. And whether the plaintiff is regularly administrator or executor of the deceased is of that character; and it would be an expensive hardship if the whole costs of preparing the cause for trial on both sides can be thrown upon the plaintiff by a trial of the question whether he has a right to personate the deceased in prosecuting the claim he sets up. Some authorities seem to suppose that this objection may be raised under the general issue. But 2 *Phil. Ev.* 289-90, is full in point that, under the general issue, an executor or administrator need not prove himself invested with the character in which he claims. He cites 15 *Johns.* 208; *Carpenter et al.* vs. *Whitman et al.*—1 *Brown*, 115. Nor would defendant in such case, be admitted to controvert the plaintiff's right to pursue his claim.

This disposes of the question in a way not urged by counsel. In reference to the view presented by counsel, there is some difficulty; and this arises from the circumstance that the town where *Gordon* resided at the time of his decease was then within the district of *Chittenden*, and the act then in force, *p.* 134 *Ed. of Laws of* 1808, authorising the appointment of an administrator *de bonis non*, gives the power only to the Judge of Probate who

*Grand Isle, January, 1828.*  ) granted administration.    This was a

*Clapp, adm. vs. Beardsley.* ) general law, and seemed to anticipate no difficulties from alterations in the boundaries of the Probate districts ; and the legislature have not, in the case before us, guarded against such difficulties by any special enactment.    In the act dividing the district of *Addison, Rev. Laws,* 546, provision is made that all business then begun should be finished in what would remain the Probate district of *Addison.*    This seems natural, at first view, at least, from the circumstance that the records of the proceedings, as far as they have gone, are there.    However, if made certain either way it is well enough.    Copies might be transferred, as was done in this case, to the court receiving the jurisdiction.    Moreover, the same section of the statute, authorising the appointment of an administrator *de bonis non,* directs that such administrator, shall proceed, in all things, in the settlement of such estate, as is before directed in said act.    That is, he must give bonds, exhibit an inventory, settle his accounts &c.    And this is a reasonable provision : for it would be unjust to subject a new administrator to account for the property in the inventory furnished by his predecessor.    So far as he should find, and get possession of, the property corresponding with the first inventory, he might be willing so to account ; but he should be compelled to account for no more than he can controul : and of this a separate inventory ought to be exhibited.    This would bring into one office all the records connected with the settlement of the accounts of the administrator *de bonis non ;* and leave the accounts of the first administrator to be settled in the office where he received his appointment.    There would be no difficulty at all in this regulation, if made and understood.    But we are now called upon to reconcile the several statutes where no such special provision seems to have been thought of.    The facts are that *Gordon* died in *Middle Hero* (now *Grand Isle*) which was then in the district of *Chittenden,* but, before the plaintiff received his appointment, became a part of the district of *Grand Isle.*    Now, though the statute provides, that the original administration shall be granted in the Probate Court of the district where *Gordon* was last an inhabitant ; yet, if no administration had been granted till his town was annexed to the district of *Grand Isle,* the administration ought to have

been granted in that district. The stat- { Grand Isle, January, 1828.
ute should be construed to regulate the { Clapp, adm. vs. Beardsley.
jurisdiction of the Probate court at the time when that jurisdiction
must be exercised : and in such case, it would be true that *Gordon*
was last an inhabitant of that district ; that is, was last an inhab-
itant of that town; which, at the time of appointing an administra-
tor, was a part of the Probate district of *Grand Isle*. The prin-
cipal difficulty now to be met, is, that the first appointment of
administrator, being in the Probate Court for the district of *Chit-
tenden*, where alone it could then be made, the jurisdiction for ap-
pointing an administrator *de bonis non* upon the same estate seems
permanently attached to that district, unless severed by some stat-
utory provision, which seems not to exist. Therefore, if the question
were now raised by an appeal from the decree of the Probate Court
for the district of *Grand Isle*, making the appointment, we should feel
constrained to reverse the decree. But, to treat the decree as a
nullity while it remains unreversed, requires a different considera-
tion. The distinction between void and voidable should be as
well observed in this case as any other : for great evils would re-
sult from a neglect to observe it. The plaintiff took administra-
tion in the Probate Court then exercising jurisdiction over the
territory where the deceased last lived. The court adjudged that
they had jurisdiction in this case, and made the appointment of
plaintiff under which he has hitherto acted and still acts. No per-
son interested in his administering well or ill is now complaining.
For aught that now appears, the defendant, who raises this objection,
has always been destitute of any interest which would entitle
him to an appeal for the purpose of testing the validity of the
decree of the Court of Probate in a regular way. It would, there-
fore, be a solecism to admit him to contest it in this irregular way,
and without any pretence of fraud affecting his rights, when he
does not stand as a person whose interest is to be affected by the
appointment of the plaintiff. On both grounds above mentioned
the objection is overruled.

But the defendant, as a third ground of defence, has set up a
title in himself under an order of sale from Judge *Miller*, in the
Probate District of *Chittenden*, to *Philo Berry* and *Polly Gordon*,
administrators ; and their deed to *Robinson*, and *Robinson's* deed

back to *Berry*, and his deed to the defendant.    The deed to *Robinson* is dated September 6, 1805, and acknowledged May 30, 1807.    This is virtually a quit claim deed.    The only covenant it contains is that the grantors will in future have no claim or demand to the premises.    The deed from *Robinson* to *Berry* is dated June 1, 1807. These two deeds and the order of sale, and the deed of *Berry* to the defendant, were all recorded July 9, 1807.

This order of sale was decided to be a nullity after a hearing of this cause in this court two years ago.—*1 Aik. R.* 168.    But it is urged that the defendant comes in as a *bona fide* purchaser.— If it be so in other respects, still it cannot be denied that he was fully conversant of all the circumstances : for the case shows that he was present at the recording of the order of sale and of all the deeds July 9, 1807.    If it were not so, still he could not succeed by setting up a defective title.    If the order of sale was void no title derived from it could be good.    The defendant's ignorance of circumstances could benefit him only in a case of title apparently good, but affected by a fraud of which he was ignorant.

But the defendant urges that the new testimony in the case, showing the necessity of a sale of the real estate of *Gordon* for the payment of his debts, renders good the order of sale.    We think this circumstance cannot avail.    It is too loose to be relied upon in the settlement of estates, or in tracing title to real estate. No order of sale should have issued till *Berry* and *P. Gordon* had settled their probate accounts and rendered an account of the property under oath, and the record of this settlement should show the result, and that result should exhibit the necessity of a sale of the real estate.

Nor is there, as urged by the defendant's counsel, any ground to presume those matters correct, which should, but do not, appear.    A presumption within the period of the statute of limitations can only be raised by the proof of such facts from which the jury ought to presume the fact relied upon.    In such a case length of time is not the principal fact, but only to be considered with other facts proved in drawing the inference desired.    There were no such facts shown in this case proper to be left to the jury with a view to their drawing an inference favorable to the defendant's claim.

4. The defendant sets up a title to the premises in question by virtue of the mortgage deed from *Gordon*, in his lifetime, to *Boardman*, the assignment of the same to *Berry*, and the deed from *Berry* to the defendant. This assignment was recorded the same 9th of July, 1807.

Grand-Isle, January, 1828.

*Clapp*, adm. vs. *Beardsley*.

This point was also decided in the same cause two years ago. That decision must now govern the court, unless the deed to the defendant, bringing him into the chain of title, alters the case. We think this cannot legally affect the case. It appears in the case that the defendant was present at the recording of the assignment and the order of sale, and could not be ignorant that *Berry* was administrator of *Gordon's* estate. If the estate was worth purchasing or redeeming, it was the duty of the administrator to redeem for the benefit of the creditors and heirs. If he redeemed or purchased with the property of the deceased, the transaction would accrue to the benefit of such heirs and creditors. And the legal presumption is not that he purchased with his own funds, when it was his duty to redeem for the estate. If it were so, this ought to be shown. The reference to *Toller's Executor* and the *Office of Executor*, alludes to cases where the executor actually purchased with his own funds, when he had no such assets as made it his duty to purchase for the estate. Such a case is not here presented. But the defendant says the legal estate is in him by virtue of these conveyances, and must prevail in this action at law, unless the plaintiff first have recourse to equity to compel a reconveyance. This argument, to have weight, must suppose the legal title in the defendant wholly untinctured with fraud ; but, if the court are correct in the remarks already made, *Berry's* taking the assignment to himself when he was administrator, and ought to have taken an acquittance to the estate, was a fraud which vitiates his title and renders it liable to be rejected in an action at law, so far as it is attempted to be set up against the estate of the deceased. And the defendant having purchased with a full knowledge of all that now appears to evince that fraud, can claim nothing that *Berry* could not have claimed, were he the defendant. The Plaintiff, therefore, as administrator, may resist this title at law, without recourse to equity.

Grand-Isle, January, 1828.  But lastly, the defendant urges that
Clapp, adm. vs. Beardsley. } if all other resources fail for his de-
fence, he was so in possession under the title derived from the
first administrator, to whose rights only the present plaintiff
suceeeds, that he was entitled to six months notice to quit before
the commencement of the action.   The conclusive answer to this
is, that the whole case shows that the defendant's possession was
adverse to the plaintiff.   Though the defendant has claimed de-
rivatively from the same source as the plaintiff, or has claimed an
interest carved out of the estate claimed by the plaintiff, yet he
has all the time claimed to be owner, and acknowledged no right in
any other.   This part of the defence is contradictory to all the
others and cannot prevail.

Judgment must be entered for the plaintiff upon the verdict in
affirmance of the judgment of the County Court.

*Charles Adams*, for the plaintiff.

*Smalley* and *Adams*, for the defendant.