HON. ISAAC F. REDFIELD, } ASSISTANT JUDGES.
HON. PIERPOINT ISHAM,

---

NOAH PRESTON *v.* ROBINSON & ROSS.

*Deeds. Town Clerk. Certificate. Tenants in common. Severalty. Possession. Parol. Jury.*

It is the duty of a town clerk to certify a copy of the record, and if he certifies the copy to be "a true record of the deed, recorded in his office," it appearing from the copy that such a record existed in the office, it will be intended that the clerk certified from the record.

The deeding of a given number of acres to one man, and another number to another, thus conveying the whole right to both, there being nothing to show that the land was intended to be conveyed in severalty, will create a tenancy in common, and they will hold in common, in the proportion of the number of acres specified in their deeds.

And even if the deeds showed that A.'s right lay in severalty, and the other owner, B., did not object to A.'s acts of possession, C., a mere stranger, could not, and C.'s intrusion might justly be regarded as a violation of A.'s possession.

So, too, A.'s contract to purchase the right of B., would enable A. to refer his acts upon the land to B.'s deed, in order to determine whether they were to be regarded as possessory, or mere torts; it has often been so decided, where the license to enter was in writing, and the same results would follow when the contract is not in writing.

When the deed describes the land, as being within the original charter limits of a town, we are to look to the charter for the right, and then to the right for its severance, and there identify the subject matter. This may always be done by parol, and it is not affected by a change of the name of the town, or setting a portion of it to another town.

When there are facts important to be considered in giving a construction to a deed, and those facts are in dispute, it may properly be submitted to the jury, under a hypothetical charge of the court.

TRESPASS *quare clausum fregit.* The defendants pleaded *liberum tenementium.* The plaintiff new assigned, setting out the *locus in quo,* by abuttals; to which defendants plead the general issue, and trial by jury.

The plaintiff, to sustain the issue on his part, offered, in evidence, a deed from Paul Atwood to himself, dated November 20, 1829, of seventy-six acres of lot number 137, in the town of Huntington, drawn to the right of James Ferris, son of Benjamin Ferris. This deed was objected to by the defendants, because it described the lot as being in the town of Huntington, and not in the town of Bolton. The plaintiff then gave, in evidence, an act of the legislature, passed in the year 1808, annexing a part of the town of Huntington to the town of Bolton. The plaintiff also introduced the town clerk of Huntington, who produced an ancient plan of said town of Huntington, as originally chartered, who testified, that he received the plan from his predecessor in office; that he had been town clerk for three years, during which time the plan had remained in the office, and had been consulted and treated, by the inhabitants of the town, as a correct plan of the town. He also testified, that a red line, drawn across said plan, was understood to be the line indicating the division line between that part of Huntington annexed to Bolton in 1808, and the remainder of the town; that he had never been on the line, or examined it personally.

It appeared from the plan, that there was no lot number 137, in the present limits of the town of Huntington, but there is a lot of that number in that part of Bolton, which was formerly a part of Huntington.

The plaintiff also introduced the records of the original proprietors of the town of Huntington, from which it appeared that lot No. 137 was drawn to the right of James Ferris, son of Benjamin Ferris, being the same named in said deed offered as aforesaid. And it also appeared, that there is no lot within the present limits of Huntington, drawn to the right of the said Ferris.

Upon this evidence, the court allowed said deed to be read in evidence to the jury, to which defendants excepted. The plan was referred to as part of exception, also said act of 1808. The plaintiff also offered in evidence a copy of a deed of one hundred acres in lot No. 137, dated June 15, 1827, from Samuel Atherton to Josiah Preston, which was objected to by defendants, on account of an alledged insufficiency in the town clerk's certificate upon said copy. The said certificate was as follows : " I hereby certify the above to be a true copy of a deed from Samuel Atherton to Josiah Preston, said deed dated June 15, 1827, and recorded in Vol. 4, page 236 of Bolton land records.

J. H. WHITCOMB, <em>Town Clerk.</em>"

The court overruled said objection, and admitted said copy to be read, to which the defendants excepted.

The plaintiff then gave evidence, tending to prove that as early as 1829 he entered upon said lot No. 137, claiming to be the owner of the same by virtue of the deed aforesaid, from Paul Atwood to him, and also as a purchaser of the interest of the said Josiah Preston, and that he had ever since claimed to be the sole owner of the said lot. The plaintiff's evidence also tended to prove that from 1829 to 1847 or 1848, the plaintiff had, from time to time, taken timber from the said lot, and some years, had taken large quantities of timber from the lot, and it did not appear that any other person had claimed the lot, or ever exercised any acts of ownership upon it. The lot had been used by the plaintiff as a timber lot wholly, and no part of it had been cleared or fenced. The evidence also tended to prove that the lot contained about 139 acres and was surrounded by lot lines, in' the usual manner of lot lines.

XXIV. 38

A copy of the original survey bill of lot No. 137, was also introduced in evidence, but it appeared that the lines, as indicated by the survey bill, would not compare with the lines of the lot as indicated upon the plan. The plaintiff also gave evidence tending to prove, that the defendants entered upon said lot No. 137, in that part of Bolton formerly Huntington, and cut and took away a quantity of standing trees, of the kind mentioned in the plaintiff's declaration.

The defendants introduced no evidence.

The court charged the jury, that if there was no such lot as No. 137, in the town of Huntington, drawn to the right of the said Ferris in 1829, as was described in the deed from said Atwood to the plaintiff, but there was such a lot drawn to said right in that part of Huntington which had formerly been annexed to Bolton, and that was the lot really intended to be conveyed by the deed, then the deed would have the same effect, as if the whole description had been correct. That if they found that said lot was marked by definite lines and boundaries, and that the plaintiff entered upon said lot as early as 1829, and had used the same in the same manner the owner of such property ordinarily does, for more than fifteen years, claiming to be the owner thereof, then he had made a good title thereto ; and also, that if there was in fact a marked line running around said lot, it was immaterial whether the line corresponded with the lines of the lot, as indicated by the original survey bill.

The defendants insisted, and so requested the court to charge the jury, that if the plaintiff entered upon said lot, claiming under his deed from Paul Atwood, that his claim could be to no more than was covered by the deed, and that as the deed purported to convey only seventy-six acres of said lot, and did not locate it, then the deed could have no operation unless the grantor and grantee mutually located the part conveyed, and that as there was no evidence of any such location or of any location, by the plaintiff, that his deed could have no operation.

The court declined so to charge, and charged the jury upon this point, that the deed from Paul Atwood to the plaintiff of seventy-six acres out of lot No. 137, conveyed to him an undivided interest in the whole lot as tenant in common, and if he entered under this deed and took possession, claiming the whole lot, it

would give him a constructive possession of the whole lot. To which the defendants excepted.

The charge as to the commission of the trespass by the defendants was not objected to. The jury returned a verdict for the plaintiff. After verdict, the defendants made a motion in arrest of judgment, which the court overruled, to which, and also to the charge of the court and to the admission of the evidence as above stated, the defendants excepted.

*L. Underwood* for defendants.

The defendants insist that the deeds were not admissible for the following reasons.

1. The deed from Paul Atwood to plaintiff describes the land as located in Huntington, in 1829, and parol evidence was inadmissible to contradict the deed.

2. The deed is of seventy-six acres of a lot containing 139 acres and is not located by the deed, and there was no evidence of a location by the parties. The deed could have no operation until the land was located. 4 Bac. Alr. 525. 2 Co. 137 Heywood's case.

The plaintiff does not claim a legal paper title, but claims a constructive possession of the whole lot, under color of the deed from Paul Atwood, and there was no evidence tending to show any claim to any lands either in Bolton or Huntington, by Paul Atwood or Samuel Atherton. So there is nothing to show that they intended to convey anything but what is mentioned in the deed. A party, to establish color of title under a deed, cannot be permitted to show that the deed covers land not mentioned or described in the deed itself. His constructive possession only arises from a prescriptive claim, co-extensive with the lands described in the deed, under which he takes possession, which is notice to others of the extent of his claim. *Hull* v. *Fuller*, 7 Vt. 100. *Rich* v. *Elliott*, 10 Vt. 211.

The deed only purports to cover seventy-six acres of 139, this does not create a *tenancy* in common of the whole lot, as the court charged. *Clapp* v. *Beardsley*, 1 Vt. 151.

The copy of the deed from Samuel Atherton to Josiah Preston, was not properly admitted. It does not purport to be a certified copy of record, and the town clerk has no authority to certify a copy of deed.

There was no evidence to show any intent of the grantors, than what is to be gathered from the deeds themselves. This is a mere matter of construction, which is to be decided by the court, and should not be submitted to the jury. *Stevens Exr.* v. *Hollister*, 18 Vt. 294.

*A. B. Maynard, Kasson & Edmunds* for the plaintiff.

1. The deed from Atwood to the plaintiff, describing the land conveyed, as in the town of Huntington, and drawn to the right of James Ferris, son of Benjamin Ferris, and numbered 137, (although there was no such lot in Huntington at the date of the deed,) was properly received as evidence of the plaintiff's title to the *locus in quo*, in Bolton, in connection with evidence that all parts of the description, (except the town,) applied to the *locus in quo*, and not to any lot in the town of Huntington, upon the common principle of the explanation of latent ambiguities, in the location of grants, of which no subject can be found, satisfying all their calls. *Lambe* v. *Reaston et ux.*, 5 Taunton 207. *Jackson* v. *Clarke*, 7 Johns. 217. *Jackson* v. *Loomis*, 19 Johns. 449. ——— v. *Young*, 3 Peters 320. *Boardman* v. ———, 6 Peters 328. *Worthington et al.* v. *Hylyer et al.*, 4 Mass. 196.

2. It sufficiently appeared from the town clerk's certificate, upon the copy of the Atherton deed, that it was a copy from the land records of Bolton.

3. The charge of the court, leaving it to the jury to say whether, upon the testimony, the *locus in quo* was the lot mentioned in the Atwood deed was correct, location and identity being exclusively questions of *fact*. *Mitchel et al.* v. *Stevens*, 1 Aiken 16. *Doe* v. *Burt*, 1 Tenn. R. 701. *Hodges et al.* v. *Strong*, 10 Vt. 247.

If the plaintiff was in constructive possession of the whole lot under the Atwood deed, it was immaterial whether it was as tenant in common or otherwise.

It is a principle of universal and unvarying application in the construction of grants, that the construction most certain and favorable to the grantee must prevail. *Hathaway* v. *Power*, 6 Hill 453.

The opinion of the court was delivered by

REDFIELD, J. This case having been argued during the pres-

ent week, and the statute giving us no discretion to delay the judgment, we could not be expected to give a very elaborate opinion.

There seems to us to be no very great perplexity in most of the questions involved.

1. We think the copy of the deed from Samuel Atherton to Josiah Preston, must be regarded as properly certified by the town clerk. He certifies the copy to be a true copy of the deed recorded in his office. We think, as it was manifestly his duty to certify a copy of the record, and as it clearly appears from the copy, that such a record existed in the office, it ought to be intended that the clerk certified from the record, the custody of which he of right had, rather than from the deed the custody of which he could not properly have. And in either case an uneducated town clerk might well say " a copy of the deed." In common language, even an attorney would so denominate it.

This deed and the deed to plaintiff were no doubt intended to cover the whole right, and do in fact cover more than all. We are not prepared to say, that if it were necessary to decide that point, that the deeding of a given number of acres to one man, and another number to another, thus conveying the whole right to both, there being nothing to show that· the land was intended to be conveyed in severalty, it ought not to be regarded as creating a tenancy in common. We think it would. The case of *Clapp* v. *Beardsley*, 1 Vt. 151, is evidently put upon the ground that the number of acres by the deed, were intended to be adjoining the other land, and so compose a particular portion of the lot. But here, there seems to be nothing to show any such intention, and it seems to us, that plaintiff and Josiah Preston are properly regarded as holding the lot in common, in the proportion of the number of acres specified in their deeds. *Clapp* v. *Beardsley.* The final conclusion of that opinion was, that the deed was not intended to convey any portion of the land in dispute, of course it could create no tenancy in common, if it conveyed no interest in that land.

And even if the deeds showed that plaintiff's right lay in severalty, and the other owner did not object to his acts of possession, a mere stranger like defendants, could not, and his intrusion might justly be regarded as a violation of the plaintiff's possession.

So too, the plaintiff's contract to purchase the right of Josiah Preston, would enable him to refer his acts upon the land to Jo-

siah's deed, in order to determine whether they were to be regarded as possessory, or mere torts. This has often been decided when the license to enter was in writing, and we do not see but the same result would follow where the contract is not in writing.

The contract is not shown for the purpose of effecting the conveyance of any interest in land from one man to another, which could not be done by a contract not in writing, or indeed by any instrument not having the requisites of a deed. And in the present case nothing appears to show that Josiah Preston had any title to the land. This deed is referred to, to show plaintiff's claim of title. · And it may as well be shown by parol, as one may show that he made an entry by his servant or agent, under a deed to himself, the oral evidence being necessary to connect the entry with the deed.

We think both these deeds sufficiently describe the land as being within the original charter limits of Huntington. One of the deeds, that of Josiah Preston, expressly says, " lying in the original grant of New Huntington, laid to the right of James Ferris, son of Benjamin Ferris." Here is scarcely ground for equivocation. And the other deed is in fact, equally explicit, " situated in the town of Huntington, drawn to the right of James Ferris, son of Benjamin Ferris." This obviously refers to the town of Huntington as *chartered.* It is a portion of a right of land in that charter, which is conveyed. Any one would look to the charter for the right, and then to the right for its severance, and there identify the subject matter. This may always be done by parol. And it is not affected by a change of the name of the town, or setting a portion of it to another town. Suppose some one should now convey the right of some one of the original proprietors of Saltash, in the county of Windsor ? There is no such town in that county, at present. Would any one hesitate, upon finding such a right in Plymouth, which was formerly Saltash, to give effect to the deed ?

It·is true, there was nothing in this case to submit to the jury, there being no dispute in regard to those facts which were important to be considered in giving a construction to the deed, it became a mere question of law. But if these facts had been in dispute, it would have been properly submitted to the jury, under a hypothetical charge, as is often done in cases of this kind.

Judgment affirmed.