## BURT *v.* PANJAUD.

1. An error committed in overruling an objection to a juror as legally disqualified is cured, where it appears affirmatively that he was not a member of the panel which tried the case, and it does not appear that by his exclusion therefrom the party's right of challenge was abridged.
2. A person offered as a juror is not compelled to disclose under oath his guilt of a crime which would work his disqualification. If he declines to answer, the objecting party must prove such disqualification by other evidence.
3. In ejectment, or trespass *quare clausum fregit,* actual possession of the land by the plaintiff, or his receipt of rent therefor, prior to his eviction, is *prima facie* evidence of title, on which he can recover against a mere trespasser.

ERROR to the Circuit Court of the United States for the Northern District of Florida.

The facts are stated in the opinion of the court.

*Mr. H. Bisbee, Jr.,* for the plaintiff in error.

*Mr. James M. Baker, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

This was an action of ejectment brought in the Circuit Court of St. John's County, Florida, by Maria M. Panjaud, to recover the possession of two lots or parcels of land in the city of St. Augustine. The suit was subsequently removed to the Circuit Court of the United States. The defendant set up no title whatever to the lots, nor, as far as the record shows, did he even rely upon the Statute of Limitations, although he had been in possession of the demanded premises for several years before the commencement of the suit. Judgment was rendered against him, and he sued out this writ of error.

A bill of exceptions presents the errors we are called upon to examine.

It appears that, before the jury was sworn to try the case, one of the panel, Henry Holmes, was sworn on his *voire dire,* and was asked whether or not he had aided or abetted the late rebellion against the United States, when he was told by the presiding judge that it was optional with him whether he would answer the question or not; and said Holmes declined to answer. The defendant excepted to this ruling, and then

moved that Holmes be excluded for cause, which the court overruled, and defendant excepted again.

It appears affirmatively that Holmes was not sworn as one of the jury, and no reason is given for it.

1. We are of opinion that, since Holmes did not sit on the jury, no harm was done to defendant. The object of both motions was to exclude him as one incompetent to sit. It is immaterial to the defendant how this was brought about. It is possible that if defendant had shown affirmatively that he was excluded by reason of his peremptory challenge, and that in doing so the exercise of his right of peremptory challenge had been abridged, the result might be otherwise. It is sufficient to say that the record does not show that he was on the jury, but in fact that he was not, or that in getting rid of him any right of defendant was abridged or lost.

2. But we are further of opinion that a juror is no more than a witness obliged to disclose on oath his guilt of any crime, or of any act which would disgrace him, in order to test his qualification as a juror. The question asked him, if answered in the affirmative, would have admitted his guilt of the crime of treason. Whether pardoned by a general amnesty or not pardoned, we think the crime was one which he could not be required to disclose in this manner. Nor would this ruling deprive the party of his right of challenge. Like a conviction for felony, or any other disqualifying circumstance, the challenger was at liberty to prove it by any other competent testimony.

He did not offer to do this, and as the juror's incompetency was not proved, the court was not bound to exclude him.

All the other exceptions relate to the insufficiency of plaintiff's title to recover, it being conceded that defendant showed none in himself.

It is true that plaintiff does not trace her title to any acknowledged source. But as to lot 4, she produces a deed from M. C. Mordecai and Thomas Kerr, dated April 30, 1845, conveying the lot to her; and she proves by a competent witness that there were two houses on this lot, and that she lived in one or both of them from 1845 to 1847, and that one Solonoa, as agent for plaintiff, returned this property for taxes

and paid the taxes from 1857 to 1860, and that the two houses were occupied.

As regards the other lot of ground, no written evidence of title is proved, but the tax-collector states that the same Mr. Solonoa, professing to act for plaintiff, paid the taxes on this lot as on the other, and that witness leased this lot from him, professing to act as agent of plaintiff.

On this evidence the court instructed the jury in several forms, that if they believed the plaintiff had possession of the lots in suit at the times mentioned, that the presumption was that she retained possession by herself or tenants until ousted by defendant, and that her removal from the city of St. Augustine was not necessarily an abandonment of this possession; and if her possession had continued for seven years, it was sufficient to enable her to recover against a trespasser or one showing no right to enter.

We think there was sufficient evidence as to both lots of plaintiff's possession under claim of ownership. The deed from Mordecai and Kerr, with her actual residence on lot 4, and payment of taxes, was clearly sufficient to establish such possession. So, also, as regards the other lots, the witness who paid the rent was her tenant. The payment of the rent to a man who professed to act as her agent bound the tenant to her as such, and he could not have disputed her title. It was her possession. This was corroborated by the payment of taxes and the absence of any proof of abandonment or loss of possession prior to defendant's tortious entry. It was sufficient for the jury, in the absence of any pretence of right by defendant.

This principle is so well settled in the law of ejectment and trespass *quare clausum fregit*, as to need no citation of authority. It will be found laid down by Mr. Greenleaf in 2 Greenl. Evid., sect. 311, that either actual possession of the premises or receipt of rent is *prima facie* evidence of title in fee; also sects. 618, 618 *a*. See also *Hutchison* v. *Perley*, 4 Cal. 33; *Nagle* v. *Massey*, 9 id. 426.

There are no other assignments of error worthy of notice, and we see no error in the record.

*Judgment affirmed.*

MR. JUSTICE FIELD concurring.

I agree with the court that the juror Holmes, in this case, could not be required to answer the questions put to him ; but I go further. I do not think that the act of Congress, which requires a test oath as to past conduct, and thereby excludes a great majority of the citizens of one-half the country from the jury-box, is valid.[1] In my judgment, the act is not only oppressive and odious, and repugnant to the spirit of our institutions, but is unconstitutional and void. As a war measure, to be enforced in the insurgent States when dominated by the national forces, it could be sustained; but after the war was over, and those States were restored to their normal and constitutional relations to the Union, it was as much out of place and as inoperative as would be a law quartering a soldier in every Southern man's house.

MR. JUSTICE STRONG dissented, on the ground that the evidence of plaintiff's possession was not sufficient to raise the presumption of title.

[1] The act was passed in 1862, repealed in 1871, and re-enacted in 1874 by sect. 820, Rev. Stat.