JOANNA MEGREEDY AND WILLIAM R. McDONALD, *as admin-istrators of the estate of William M. Megreedy, deceased,. v. J. B. MACKLIN, AND DOLLY FLITCH, as administratrix· of the estate of Sylvester Flitch, deceased.*

(Filed June 9, 1903.)

**INDIAN LANDS—Sub-leasing in Violation of Terms of Lease Illegal.**. Where a party holds a lease of Indian lands which has been approved by the proper officers of the interior department, such lease· containing a provision that the party holding the lease will not at any time, during the period for which the said lands and premises are herein leased, sub-lease, assign, lease, convey or transfer· any of his estate, interest or term or any part thereof, or sublet the same to any person without the consent thereto of the· party of the first part and the approval of the same by the secretary of the interior: **Held,** that a sub-leasing of the same without the consent of the secretary of the interior is void, and conveys no rights by such sub-leasing, and that the sub-lease cannot be enforced; that the doctrine of estoppel between landlord and' tenant does not apply.

(Syllabus by the Court.)

·*Error from the, District Court of Noble County; before Bay-ard T. Hainer, Trial Judge.*

*C. A. Morris* and *George S. Green,* for plaintiffs in error..

*Diggs & Cress,* for defendants in error.

STATEMENT OF FACTS.

On the 4th day of August, 1900, William R. McDonald, as administrator of the estate of William R. Megreedy, com-menced this action in the district court of Noble county by filing his petition in which he alleges that William R. Me-

greedy owned a lease of lands in the Ponca Indian reservation,. particularly describing said lands.

That Megreedy in the year 1899, subleased said lands to J. B. Macklin, and attaches a copy of the lease; that Macklin continued in the possession of said lands after the expiration of said lease, and planted said lands in corn and wheat; that under the terms of said lease Megreedy was entitled to one-half the wheat when threshed; that Sylvester Flitch claimed an interest in said wheat; that defendants, Macklin and Flitch, refused on demand to deliver said wheat; that defendants are insolvent, and are selling the wheat, and prays judgment against the defendants for the value of the wheat sold, for an injunction, for a receiver, and for judgment for one-half of the wheat remaining or its value.

On August 4, 1900, an injunction was granted by the probate judge of Noble county.

On September 3, 1900, the defendants filed a motion to dissolve the injunction, and on the same day defendants filed their answer containing first a general denial, except admitting the sub-letting of the premises in 1899, as alleged in the petition, and second, setting up the fact that the lands sub-leased were Indian lands, and held by Megreedy under an Indian lease approved by the Indian agent, the commissioner of Indian affairs, and the secretary of the interior, and that the sub-leasing had not been so approved; that said defendants were in possession of said premises under and by virtue of a purchase of the lease of Megreedy from William R. McDonald, as his administrator, paying therefor the sum of three hundred dollars, and the instalment of rent due on said

lease from the estate of William R. Megreedy amounting to $371; that said $371 was used by the administrator in discharging and paying the debts of the estate.

On September 8, 1900, the court modified the injunction so as to permit the wheat to be threshed and stored.

On Sept. 13, 1900, plaintiff filed his reply, setting up that the sale of said lease was never approved by the probate court; that he received the three hundred dollars; that the contract of sale was rescinded, and money repaid by being deposited in the bank and notifying Flitch thereof.

On the 26th day of February, 1901, the death of Sylvester Flitch was suggested, and on application of the plaintiff, the cause was revived in the name of Dollie Flitch. A jury being waived by all parties, the case came on to be heard by the court. On the trial of the cause the defendants objected to the introduction of any evidence on the part of the plaintiff for the reason that the petition did not state facts sufficient to constitute a cause of action, which objection was overruled and exception reserved.

On the trial the plaintiff offered in evidence the Indian leases to the land described in the petition, which leases contained the following provision:

"That he will not at any time during the period for which said land and premises are herein leased, assign, lease, convey or transfer any of his or their estate, interest or term, or any part thereof in the same, or the appurtenances thereto, or sub-let the same to any person or persons whomsoever, without the consent thereto of the party of the first part in writing, being first obtained, and the same approved by the secretary of the interior."

The cause was tried on the 14th day of June, 1901, and on the following day the court rendered judgment in favor of the defendant. Plaintiff filed motion for a new trial on the 18th day of June, 1901, and on the 29th day of the same month it was overruled by the court, to which judgment and the overruling of the motion for a new trial, exceptions were saved, and the cause is brought here for review. Affirmed.

Opinion of the court by

IRWIN J.: The sole grounds on which reversal is asked is that the district court erred in holding that the sub-leasing of the lands without the consent of the secretary of the interior was illegal and void. Plaintiff in error claimed the law to be that as the defendants were tenants of the plaintiff, and had enjoyed peaceable possession of the premises, they were estopped from disputing their landlords' title, and many authorities are cited in support of this position, and it must be admitted that the doctrine as a general proposition is true. But we think a distinction is to be observed between the cases where the contract is void for want of compliance with some particular form, or on account of the existence of some disability of one of the parties, or on account of the statutes of frauds and the failure to comply with some of the necessary legal requisites which are merely formal, and those which are absolutely prohibited by law, and are in direct violation of the statute and against public policy.

In the case of *Mayes v. The Cherokee Strip Livestock Association,* reported in 51 Pac. 215, which was an action brought under a lease of Indian lands, which did not have the consent and approval of the secretary of the interior, and

was brought to recover for the rent due, and where the defendants had occupied the premises and had peaceable, uninterrupted possession, and the only defense set up was the illegality of the lease for want of the approval of the interior department, the Kansas supreme court held that no recovery could be had, using the following language:

"It is suggested that the defendants were tenants of the plaintiff and should not be permitted to deny the plaintiff's title nor to question the legality of the lease. As the lease was contrary to public policy, and a transgression of an express law, the rule invoked cannot be applied."

In this case the Kansas court cites as authority for its decision *Dupas v. Wassel,* 1 Dill, 213, Federal Case No. 4132:

"It was held that the lease of land on which the Hot Springs were situated being in violation of an act of congress was absolutely void, and that the ground rent for the use of the lands could not be recovered, and it was further held that the lessee was not estopped from setting up the illegality."

*Uhlig v. Garrison,* 2 Dakota, 71, N. W. 253:

"The contract in this case is to be distinguished from those which are merely void from want of compliance with some form, or those lacking any other essentials. Here it was prohibited by statute and being unlawful it does not fall within the class of contracts which are void, because of the inefficiency of one of the parties or because of the statute of frauds. In cases like this, the courts will not lend their aid to the parties, either to recover damages under the illegal contract, or the profits supposed to have been derived from the unlawful transaction by either party. The fact that the defendants co-operated in the transaction and are equally implicated with the plaintiff does not prevent them from setting up the de-

fense of invalidity; there is no innocent party here in whose favor an exception can be made as the prohibitory provisions affect all alike."

The principle, we take it, is well established, that courts of law will not lend aid in settling differences between parties who are jointly engaged in a transaction which is against public policy and which is prohibited by statute. As Lord Kenyon said in the famous case, "The Highwayman," by way of illustrating this doctrine: "I will not sit to take an account between two robbers on Hounslow Heath."

And the supreme court of the United States in the case of *McMullen v. Hoffman,* 174 U. S. 654, say:

"The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract. In cases of this kind the maxim is *Potior est conditio defendentis."*

We think it is needless to prolong the discussion of this proposition, for the reason that our own supreme court have settled the question in the case of *Light v. Conover,* 10 Okla. 732, where the court say:

"But it is contended by the defendant in error that the defendants were tenants of the plaintiff and used and occupied the land, and therefore, they are estopped from denying the plaintiff's title, or to question the legality of the lease. We think not. The written lease, as well as the parol agreement, were not only contrary to public policy, but were entered into in violation of a positive statute, and hence the doctrine of estoppel does not apply."

And in this case our own supreme court cites with approval the case of *Dupas v. Wassel,* above cited, and also the case of *Mayes v. The Cherokee Strip Livestock Association* above quoted, and this court in that case clearly and distinctly lays down the rule:

"A written or parol lease, entered into between the plaintiff and the defendants without the consent and approval of the Indian agent and the commissioner of Indian affairs, for the pasturage of cattle located upon the Kiowa, Comanche and Apache Indian reservation, is null and void, and therefore no action can be maintained."

This decision stands as the law of this territory, has never been overruled, and is binding as the law in this case, and we have no desire at this time to criticise or change the law therein expressed. The theory of the law is that while the relations the parties occupy toward each other might and no doubt would, under ordinary circumstances, create the relation of landlord and tenant, yet by reason of the illegality of their contract, the relation of landlord and tenant is not created and does not legally exist. But it is insisted by plaintiff in error that no one save the government could be heard to complain of the illegality of the contract; but we think the authorities before cited fully answer this contention, as it is there held that parties other than the government might defend on such grounds. If it be the law that the government alone can complain of the illegality of this contract, then it follows that if the government stands mute, or if there is no method provided by law for the government to intervene in such suits between private parties, the result would be that our courts would be constantly engaged in settling disputes and

adjusting differences arising out of the contracts which are made in open and notorious violation of law, and against public policy, by parties who were equally culpable; in other words, dividing the spoils of crime between criminals, and in determining between violators of the law which wrong-doer should get the greater share of the fruits of the wrong-ful and illegal act.

The only remaining point in this case is as to the question of the sale of the lease by Megreedy to Flitch, and as to the rescission of such sale, but for the reason above stated, it is immaterial as to this contention whether such sale was made or not; also equally immaterial whether it was rescind-ed; hence, it is unnecessary to waste any time on it.

Finding no error in this record, the decision of the district court is affirmed, at cost of plaintiff in error.

Hainer, who presided in the court below, not sitting; Burford, C. J., dissenting; all the other Justices concurring.