EMIL DOLD v. WILLIAM KNUDSEN.

FILED NOVEMBER 18, 1903.    No. 13,136.

1. Trespass. One in the actual peaceable possession of land may maintain trespass against a party forcibly invading such possession, even though the latter has the better title to the freehold.

2. ——: JUSTICE OF THE PEACE: JURISDICTION. The jurisdiction of a justice of the peace in an action of trespass to lands extends no further than to enable him to try the fact of possession. He has no jurisdiction to inquire into the title to lands or into the right of possession as between the parties to such action. If the plaintiff can maintain his right to sue in trespass, by proof of actual possession, the action is cognizable in a justice court, but if the possession is constructive merely and can only be shown by the production of title, the justice has no jurisdiction.

ERROR to the district court for Sherman county: HOMER M. SULLIVAN, JUDGE. *Reversed.*

*Aaron Wall* and *H. M. Mathew,* for plaintiff in error.

*Richard J. Nightengale, contra.*

DUFFIE, C.

Knudsen, defendant in error, is the owner of about eleven acres of land in section 27, township 15, range 13, in Sherman county, Nebraska. A tract of land adjoining him on the east, is owned by the Catholic church, the legal

title of which is held by Bishop Scannell. Dold, plaintiff in error, occupies a tract adjoining Knudsen on the north. The land owned by Knudsen and the church is bounded on the south by a road which leads to the village of Ashton. There is no public highway from Dold's land leading to the Ashton road, and, for some years, Dold and other parties living in his vicinity used a strip of land on the west side of the church property to reach this highway. Prior to 1894, the east four acres of the Knudsen tract were owned by one Jeschke who, on the 16th day of April of that year, conveyed the same to Knudsen. After this conveyance, Knudsen caused a survey of the line between his property and that owned by the church and built a fence near the line as established by the survey. The evidence discloses that a prior survey of the line had been made in 1895, and that the first survey located the line two feet and four inches west of the lines established by the survey made by Knudsen. Some time in the summer of 1900, Dold made an agreement with Bishop Scannell by which he leased from him the west sixteen and one-half feet of the church property, for fifty years from March 19, 1900, for a private way, to enable him to reach the Ashton road. A written lease for this strip of ground was executed by Bishop Scannell, which is not dated, but which was acknowledged on the 29th day of June, 1900.

Knudsen sued Dold in the county court for trespass upon his land, claiming damage for less than two hundred dollars, and from a judgment in his favor Dold appealed to the district court. The petition in the district court charges the defendant with throwing down the plaintiff's fence, with digging up the ground, with removing fence posts, wire fencing, and a gate of plaintiff's, and with removing a monument or post established at the northeast corner of his premises. The defendant, in the first count of his answer, alleged that the title and boundaries of land were brought in question in the controversy between the parties, that on that account the county court had no jurisdiction to give judgment in the case and the district

court had no jurisdiction on appeal. The second count of the answer is a general denial, and the third count avers ownership of the premises by the church society and peaceable possession thereof by Dold. A demurrer to the first count of the answer was sustained by the court; a reply was filed denying the allegations of the third defense. On a trial to the court without a jury, judgment was given in favor of the plaintiff; and the defendant has taken error to this court.

The court made the following findings of fact: (1) That in June, 1900, a corner was established by the county surveyor at the northeast corner of plaintiff's land; (2) that in 1895 the same surveyor established a corner, intending it to be a corner of the same land, at a point two feet and four inches west of the corner established in 1900; (3) that the corner established in 1895 was two feet and four inches out of place; (4) that at the time said corner was established in 1895, and at all times thereafter until 1900, the parties interested on both sides recognized it to be the true corner and believed it to be the true corner; (5) that in the plowing and scraping done by defendants, they did not plow, or break, or scrape, any land west of the line established in 1895, but they did tear up, plow and remove the ground immediately adjoining it on the east of where the corner and line were established in 1900; (6) that in so doing defendants injured the grade which the plaintiff had prior thereto placed in an embankment, while grading and leveling his park; (7) that the plaintiff had constructed a fence running north and south and inside of the line fixed by the surveyor in 1895, and had set posts there; (8) that the defendant, Emil Dold, maliciously tore up and destroyed the fence, so established, and that the same was upon the land of plaintiff and within the line established in 1895. The court also found generally in favor of the plaintiff.

We gather from the evidence that a creek runs east and west along the south line of Dold's land, and that he graded down the south bank along said stream in order to make

his private way more accessible. The removal of the soil, for which plaintiff claimed damage, occurred during this grading; but the grade, as found by the court, did not extend west of the line established by the survey of 1895. It will also be observed from the findings that the district court found that plaintiff's fence was set within the line established by the survey of 1895, and that Dold maliciously tore up and destroyed a portion of said fence. It is insisted by the plaintiff in error that the boundary between the church property and the land of defendant in error was the principal question in dispute in this action, and that the county court, acting as a justice of the peace, had no jurisdiction to entertain and try the cause; that his judgment entered in the case was void; and that the district court therefore had no jurisdiction upon appeal. Section 18, article VI of the constitution, is as follows:

"Justices of the peace and police magistrates shall be elected in and for such districts, and have and exercise such jurisdiction as may be provided by law; *Provided,* That no justice of the peace shall have jurisdiction of any civil case where the amount in controversy shall exceed $200; nor in a criminal case, where the punishment may exceed three months' imprisonment, or a fine of over $100; nor in any matter wherein the title or boundaries of land may be in dispute."

Section 906 of our code is in the followings words:

"Justices of the peace shall have jurisdiction in actions for trespass on real estate, where the damages demanded for such trespass shall not exceed $200, and no claim of title to such real estate set up by the defendant shall take away or affect the jurisdiction hereby given."

On first impression, it might appear that section 906 of our code, giving a justice of the peace jurisdiction to try actions of trespass, where the amount in controversy does not exceed $200, notwithstanding that the defendant attempts to plead title in himself, is in conflict with section 18 of article VI of the constitution, which prohibits a justice from taking jurisdiction, where the title or boundaries

of land may be called in question.  An examination of the rules governing actions of trespass will, we think, disclose that the provisions of the code do not infringe upon the constitution.  An action for trespass upon real estate can only be maintained by the party in possession at the time the trespass was committed or by one who then holds the legal title to the premises.  In *Yorgensen v. Yorgensen,* 6 Neb. 383, it is said:

"In order to maintain an action of trespass *quare clausum fregit* by one not holding the legal title to lands, he must show an actual possession in himself at the time the alleged trespass was committed."

And in *Nelson v. Jenkins,* 42 Neb. 133, this court held that in order to maintain trespass to land, the plaintiff must be the owner, or in possession thereof, when the acts complained of were committed.  While the question does not appear to have been directly before this court, the authorities are numerous that an action of trespass may be maintained by one without title, but holding the actual peaceable possession of real estate, even against the true owner.  In *Larue v. Russell,* 26 Ind. 386, it is said:

"A party peaceably in possession of lands may maintain trespass for an injury to his possession, though the trespasser have a better title to the lands."

In *Newcombe v. Irwin,* 55 Mich. 620, the facts were, that the plaintiff occupied the west half of a certain quarter section of land, and the defendant occupied the east half of the same quarter.  A line fence divided their respective possessions, and each had cultivated the land up to this fence.  The plaintiff cut a crop of clover growing on the land occupied by her next to the division fence, and the defendant entered and drew it away, claiming that the clover was grown upon land belonging to her, although occupied and fenced in by the plaintiff.  On the trial, defendant offered to prove title, and it was shown that, two years prior to the trespass, the county surveyor had surveyed this quarter section and, by his survey, the division fence was some ten rods on Irwin's land, and since

that time the parties, respectively, had claimed this strip between the old division fence and the dividing line indicated by the survey, and had been endeavoring to obtain and hold the possession as against each other. The circuit court, to which the case had been certified from justice court, held that the title of land did not come in question, and Judge Cooley, in delivering the opinion of the court, said:

"There was no error in holding that the title was not in question. It appears not to have been disputed that up to the time of the survey made by the county surveyor the plaintiff was in possession up to the old division fence. If the survey showed that she occupied any part of Irwin's land, taking possession forcibly and against her will was not a proper remedy. To disturb a peaceable possession by force is a trespass, irrespective of ownership; and if the plaintiff had possession in fact, the forcible disturbance of her possession was made out beyond question. The judge was therefore right in treating the issue as one of possession merely."

In *Smith v. Schlink*, 6 Colo. App. 228, it was held, that where one of two adjoining tenants, each, respectively, in possession of land and buildings thereon up to a dividing fence, removes the fence on to the land of the other, an action by the other for damages for the taking of the lands and buildings thereon is not an action in which title or boundaries of lands are in dispute, of which a justice could not have jurisdiction, there being no dispute as to where the fence was, and it makes no difference that plaintiff introduced evidence to show that the true line was where the fence had stood. In the body of the opinion it is said:

"The defendant, until he removed the fence, had never been in possession of any part of the ground within the plaintiff's inclosure, nor had the defendant's grantor ever been in such possession. The survey made, to show that the true line was where the fence had stood, was unnecessary, and the evidence concerning it was immaterial. The plaintiff's right of action grows out of the invasion of a

possession which he actually had, and whose boundary, as between himself and the defendant, was the fence. When the defendant removed the fence, he committed a trespass. If he thought he had a rightful claim to the ground which he took, the courts were open for the adjudication of his title; but no title, or claim of title, is a justification of his forcible assumption of possession."

To allow a party to eject another in the peaceable possession of land, even though he be the true owner, is to dispense with actions for trying the title or right to possession of land. It is, as Judge Cooley says, to make a man judge in his own case, with the right to confirm his judgment; to allow him to employ force against a peaceable party; to invite a breach of the peace and a public disturbance instead of a legal settlement of disputed titles. Cooley, Torts (2d ed.), *323.

Where, therefore, an action of trespass is brought by one in actual possession, the fact of ownership becomes immaterial, the only issue to be tried being, did the defendant trespass upon premises in the actual possession of plaintiff?

In *Yorgensen v. Yorgensen,* 6 Neb. 383, a general rule of law was announced, namely, that "when land is unimproved, and unoccupied, the person holding the legal title is deemed to be in possession thereof." In other words, that legal title to land carries with it constructive possession in the owner. But as there can be no constructive possession where actual possession is held by another, an action for trespass for a disturbance of the possession must be brought by the one in actual occupancy of the land, while, for an injury to the freehold, such as the cutting of timber or the removing of the soil, the real owner of the estate may recover his damages upon proof of title. These considerations make it plain that in order to maintain trespass by one not in possession of the premises, he must establish his title to the land. He could not, therefore, commence an action in justice court because, in order to establish his right to a recovery, he would have to rely upon

his paper title, and this being denied by the defendant would require the justice to pass on a question of title, which he is prohibited from doing by the constitution. The plaintiff, in such a case, would by his own evidence oust the justice of jurisdiction to try the case; and it would be unnecessary for the defendant to plead title in himself, or to enter any plea except a general denial, which puts in issue both the plaintiff's title and the trespass complained of.

The evidence makes clear the fact found by the court, that up to the time of the second survey, made in 1900, all parties in interest recognized the corner established by the survey of 1895 as the true corner. Dold and others in the neighborhood had used a strip off from the west side of the church property as a private way to reach the Ashton road. So far as any actual possession of the land was established, the possession was in Dold and the other parties who used this strip as 'a private way. Knudsen never was in the actual possession of any part of this strip, and could only establish his ownership by showing a paper title thereto. This could not be done in a court exercising the powers of a justice of the peace, and the judgment of the county court was, so far as the record discloses, void for want of jurisdiction. Had the defendant in error brought his action to recover for the trespass charged, in tearing down his fence erected on his land and built within (west of) the line of the survey of 1895, no question of title would arise, as the evidence is clear that he was in the actual possession of the land inclosed by such fence, and such possession was evidence of title, sufficient to enable him to maintain trespass for breaking his close; but when he claimed damages for a trespass on the strip of land, the title to which was in dispute, and to which he could show title only by introducing his deed from Jeschke, the court was without jurisdiction to pass upon his claim of ownership to this strip of land, or to award him damages therefor, as was apparently done by a general finding and judgment in his favor. *Sheldon v. Edwards,* 35 N. Y. 279; *Slater v. Skirving,* 51 Neb. 108.

We recommend that the judgment be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

KIRKPATRICK, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.