## HOLDEN v. LYNN.

No. 1332.   Opinion Filed December 12, 1911.

Rehearing Denied January 9, 1912.

(120 Pac. 246.)

1.  **JUSTICES OF THE PEACE**—Appeal—Immaterial Errors. Very liberal rules of construction should be applied to pleadings in a justice of the peace court, and technical objections will not be allowed to reverse a judgment, where it is apparent from an examination of the entire record that no substantial right of the party raising the objection could have been affected by the ruling, and where a reversal on that ground would tend to defeat the ends of justice.

2.  **ANIMALS** — Trespassing Animals — Destruction of Crops — Evidence. When an action of trespass is brought against the owner of cattle, which have broken through the fences and destroyed the plaintiff's corn, evidence is properly excluded which tends to show that the corn was grown and remained in the shocks on Indian land, cultivated by a lessee whose lease was not approved by the Secretary of the Interior. Williams v. Steinmetz, 16 Okla. 104, 82 Pac. 986, overruled.

3.  **PARTNERSHIP**—Action of Tort—Parties. An action of tort may be brought against one member of a partnership without joining the others.

_ (Syllabus by Ames, C.)

*Error from Osage County Court; C. T. Bennett, Judge.*

Action by John P. Lynn against J. S. Holden, to recover the value of certain corn and fodder belonging to the plaintiff and destroyed by the cattle of the defendant. Judgment for plaintiff, and defendant brings error. Affirmed.

*Grinstead, Mason & Scott,* for plaintiff in error.

*Boone, Leahy & MacDonald,* for defendant in error.

Opinion by AMES, C.   The plaintiff sued the defendant in a justice court of Osage county for $100, the alleged value of certain corn and fodder destroyed by defendant's cattle. Judgment was rendered for the plaintiff, and an appeal was taken to the

county court, where, on a retrial, judgment was again rendered for the plaintiff, in the sum of $65, and the defendant brings error.

Three questions are involved: (1) Did the bill of particulars state a cause of action? (2) Did the court err in excluding evidence tending to show that the land on which the corn was grown belonged to an Osage Indian, and was not under lease approved by the Secretary of the Interior? (3) Can the suit be maintained against the defendant alone, when the cattle belonged to a partnership?

The objection urged against the bill of particulars is that the plaintiff does not allege therein that he was the owner of the crops destroyed; and it does require the application of exceedingly liberal rules of construction to ascertain from the bill of particulars who owned the cattle, but, in view of the fact that this is a justice of the peace case, that a justice court is not a court of record, that the evidence did establish that the defendant owned the cattle, and that no substantial right of the defendant can be affected, we are not disposed to reverse the case.

In *Lobenstein v. McGraw*, 11 Kan. 645, 648, Justice Brewer, in delivering the opinion of the court, said:

"It is not to be expected that a bill of particulars will be drawn with the same fullness and precision as a petition. Much of the business in justices' courts is done by the parties themselves, and not through the instrumentality of attorneys. It is well that this is so, for thus a convenient, expeditious, and cheap method of settling minor disputes, and collecting small accounts, is furnished to all. The justices themselves are selected, not on account of their legal knowledge, but because of their good common sense. The chief value of these tribunals, to the poorer classes at least, would be lost if the rules of pleading in them were made so technical and difficult that the services of an attorney were necessary in every case."

On the trial it appeared that the corn involved was grown on the "Old Lady Corndropper place"; that it had been cut and shocked; that the plaintiff bought it from the man who raised it; that it was surrounded by a wire fence; and that the defendant's cattle broke down this fence and ate the corn. The defend-

ant offered to prove that this was Osage Indian land, that the man who raised the corn did not have a lease approved by the Secretary of the Interior, and the court refused to permit this evidence. This ruling is assigned as error. The defendant's contention is that under the Act of June 28, 1906, c. 3572, sec. 7, 34 Stat. 539, providing "that all leases given on said lands [Osage] for the benefit of the individual members of the tribe entitled thereto, or for their heirs, shall be subject only to the approval of the Secretary of the Interior," this lease was void; and that therefore the plaintiff could not recover for trespass to his corn bought from the lessee. In support of this contention, he cites *Light v. Conover,* 10 Okla. 732, 63 Pac. 966; *Megreedy v. Macklin,* 12 Okla. 666, 73 Pac. 293; and *Williams v. Steinmetz,* 16 Okla. 104, 82 Pac. 986. *Light v. Conover* and *Megreedy v. Macklin* hold that, when an Indian lease does not carry the approval of the Secretary of the Interior, it is absolutely void, and that no rent can be recovered under the lease.

These cases rest upon the well-established rule that the courts will not enforce an invalid contract, whether *malum in se* or *malum prohibitum;* and that therefore the plaintiff cannot recover in any action where it is necessary for him to prove the illegal contract, in order to make out his case. In the case at bar, as it was not necessary for the plaintiff to prove title to the land, or to prove the existence of any lease at all, the principle on which these cases were decided does not apply.

*Williams v. Steinmetz, supra,* however, presents a different question. In that case certain land in Caddo county had been allotted to Robert L. Williams, a son of W. G. Williams (a white man, who had been adopted into the Caddo tribe) and of a Caddo Indian woman. Steinmetz and Painter leased this land from Robert L. Williams, took possession of it, and planted it to corn and cotton. The lease was not approved by the Secretary of the Interior. The cultivated land was inclosed by a good fence. The cattle of W. G. Williams and Robert L. Williams broke down the fence and destroyed the corn. Suit was brought by the lessees against the owners of the cattle, and judgment was rendered in their favor by the trial court. On appeal, the Supreme Court

of the territory, in an opinion delivered by Justice Burwell, after holding that the lease was void, held that by reason of that fact the plaintiffs could not recover damages for the trespass. The principal discussion in the opinion is as to the validity of the lease, and it seems to have been taken for granted by the court that if the lease was invalid the plaintiffs could not recover. At page 109 of 16 Okla., at page 988 of 82 Pac., the court said:

"These provisions are an exception to the general rule, and authorize the leasing of the lands of those Indians who cannot, by reason of age or other disability, personally and with benefit to themselves occupy or improve their allotments, or any part thereof, under such terms, regulations, and conditions as shall be prescribed by the Secretary of the Interior. Robert L. Williams does not come within this exception. He was not prevented by reason of his age or other disability from farming the land profitably. The purpose of the government in allotting lands to Indians in severalty is to encourage them in the cultivating of such lands, and to induce them, if possible, to establish fixed places of abode and acquire habits of industry. The allottee is supposed to live on the land and cultivate it himself. It may be leased only if he, by reason of age or disability, cannot properly cultivate and care for it himself. The lease in question was made in violation of a positive statute of the United States; and therefore the courts will not aid the parties in enforcing it. Nor will they grant relief when its terms have been violated. The lessees had no right on the allotted land of Robert L. Williams, and they planted and cultivated the crops at their own peril. For their destruction, they cannot recover damages. *Light v. Conover,* 10 Okla. 732, 63 Pac. 966; *Mayes v. Cherokee Strip Live Stock Ass'n et al.,* 58 Kan. 712, 51 Pac. 215."

It will be noted from the quotation that the two cases cited by the court in support of the conclusion reached are *Light v. Conover* and *Mayes v. Cherokee Strip Live Stock Ass'n.* We have called attention to the fact that *Light v. Conover* was an action to recover rent; and this is likewise true of *Mayes v. Cherokee Strip Live Stock Ass'n.* In both of these cases, recovery was denied, on the ground that the plaintiff would have to prove an illegal contract, and that, as the law will not aid the parties in enforcing an illegal contract, recovery could not be had. That

principle, however, did not apply in *Williams v. Steinmetz,* nor does it apply in the case at bar.

It will be noticed that the exact question involved here is whether the *defendant* could offer evidence concerning this leasehold interest. If it devolved upon the defendant to prove this state of facts, then it is clear that it was not necessary for the plaintiff to do so, and if the plaintiff did not have to prove the illegal contract, he, of course, did not rely upon it, and the court, by giving the relief sought would not be enforcing or lending its aid to the enforcement of an illegal agreement. If a man who raises a crop of corn on Indian land, without a lease executed in the manner required by law, acquires no rights whatever to the corn after it is grown and harvested, even as against a wilful trespasser, and if a man who purchases this corn from such a lessee acquires no rights whatever, even as against a wilful trespasser, then the plaintiff in this case should not have recovered. But if such an owner has a property interest, good against a bare trespasser, the ruling of the trial court was correct. A few questions ought to demonstrate the rule. If a thief enters the corncrib of such a lessee, should he go free, because the lease had not been approved by the Secretary of the Interior? And should a passerby have the right to enter the barnyard of such lessee and take his hogs, which had been raised upon the land, merely because the lease had not been approved by the Secretary of the Interior? If a trespasser should enter upon the premises of such a lessee and commence harvesting his wheat crop, would the lessee be remediless in the courts? Does a man who takes possession of land under a void lease become thereby outlawed?

So far as our attention has been called to the authorities, and so far as our own examination has taken us, *Williams v. Steinmetz* stands alone in the history of English and American jurisprudence.

In *Campbell v. Rankin,* 99 U. S. 261, 25 L. Ed. 435, 436, Mr. Justice Miller, speaking for the Supreme Court of the United States, says:

"The record sufficiently shows that neither party to this suit had any legal title to the *locus in quo* from the United States,

and that only such possessory right as the act of Congress recognizes in the locator and occupant of a mining privilege was in controversy. Since this right of possession was the matter to be decided by the jury, it is almost incomprehensible that the proof of prior occupancy, and especially when accompanied by a deed showing color of right, should be rejected. In actions of ejectment, or trespass on real estate, possession by the plaintiff at the time of eviction has always been held *prima facie* evidence of the legal title, and as against a mere trespasser it is sufficient. 2 Greenl. Ev. sec. 311. If this be the law, when the right of recovery depends on the strict legal title in the plaintiff, how much more appropriate is it as evidence of the superior right of possession under the acts of Congress, which respect such possession among miners. If this plain principle of the common law needed support from adjudged cases, as applicable to the one before us, it may be found in the courts of California, in *Attwood v. Fricot,* 17 Cal. 37 [76 Am. Dec. 567]; *English v. Johnson,* 17 Cal. 107, 76 Am. Dec. 574; and *Hess v. Winder,* 30 Cal. 355."

In *Burt v. Panjaud,* 99 U. S. 180, 25 L. Ed. 451, it is said in the syllabus:

"In an action of ejectment or trespass to land, actual possession, or receipt of rent by plaintiffs prior to eviction, is *prima facie* evidence of title, on which recovery can be had against a naked trespasser."

In *Haws v. Victoria Copper Mining Company,* 160 U. S. 303, 316, 16 Sup. Ct. 282, 287, 40 L. Ed. 436, 440, the court says:

"The elementary rule is that one must recover on the strength of his own and not on the weakness of the title of his adversary; but this principle is subject to the qualification that possession alone is adequate, as against a mere intruder or trespasser without even a color of title, and especially so against one who has taken possession by force and violence. This exception is based upon the most obvious conception of justice and good conscience. It proceeds upon the theory that a mere intruder and trespasser cannot make his wrongdoing successful by asserting a flaw in the title of the one against whom the wrong has been by him committed. In *Christy v. Scott,* 14 How. 282, 292, 14 L. Ed. 422, 426, this court, speaking through Mr. Justice Curtis, said: 'A mere intruder cannot enter on a person actually seized, and eject him, and then question his title, or set up an outstanding title in another. The maxim that the plaintiff must recover on the strength of his own title and not on the weakness of the defendant's, is applicable to all actions for the recov-

ery of property. But if the plaintiff had actual prior possession of the land, this is strong enough to enable him to recover it from a mere trespasser, who entered without any title. He may do so by a writ of entry, where that remedy is still practiced (*Jackson v. Boston & W. R. Corp.*, 1 Cush. [Mass.] 576), or by an ejectment (*Allen v. Rivington*, 2 Saund. 111; *Doe, Burrough, v. Read*, 8 East, 356; *Doe, Hughes, v. Dyball*, 1 Mood. & M. 346; *Jackson v. Hazen*, 2 Johns. [N. Y.] 438; *Whitney v. Wright*, 15 Wend. [N. Y.] 171), or he may maintain trespass (*Catteris v. Cowper*, 4 Taunt. 548; *Graham v. Peat*, 1 East, 246).' So, also, in *Burt v. Panjaud*, 99 U. S. 180, 182, 25 L. Ed. 451, 453, it was said, Mr. Justice Miller expressing the opinion of the court: 'In ejectment or *trespass quare clausam fregit*, actual possession of the land by the plaintiff, or his receipt of rent therefor prior to his eviction, is *prima facie* evidence of title, on which he can recover against a mere trespasser.' The same principle was enforced in *Campbell v. Rankin*, 99 U. S. 261, 262, 25 L. Ed. 435, 436, and application of it to various conditions of fact is shown in *Atherton v. Fowler*, 96 U. S. 513, 24 L. Ed. 732; *Belk v. Meagher*, 104 U. S. 279, 287, 26 L. Ed. 735, 738; *Glacier Mountain S. Min. Co. v. Willis*, 127 U. S. 471, 481 [8 Sup. Ct. 1217] 32 L. Ed. 172, 174."

In *Patchen v. Keeley*, 19 Nev. 404, 14 Pac. 347, it is said:

"We can see no reason why a stranger may trespass upon a mining claim, held only by actual possession, any more than he can upon farming lands so held, where no attempt has been made to secure the government title. They are both valuable to the possessors, and, in one case as much as in the other, presumption of title follows possession."

In *Shaw v. Hill*, 79 Mich. 86, 91, 44 N. W. 422, 423, it is said:

"It was urged upon the argument that, the plaintiff's deed having been held to be void by the circuit judge, he could not maintain this action, based upon his naked possession, because he had no valid, subsisting interest in the premises. The law is well settled that the possession of land is sufficient to authorize a recovery in an action of ejectment against a mere intruder; and, in the absence of proof of a paper title on either side, the presumption of title is in favor of the first possessor. *Davis v. Easley*, 13 Ill. 192; *Brooks v. Bruin*, 18 Ill. 541; *Hubbard v. Little*, 9 Cush. [Mass.] 475; *Jones v. Easley*, 53 Ga. 454; *Christy v. Scott*, 14 How. 282 [14 L. Ed. 422]; *Burt v. Panjaud*, 99 U. S. 180 [25 L. Ed. 451]; *Whitney v. Wright*, 15 Wend. [N. Y.] 171;

*Thompson v. Burhans,* 79 N. Y. 93; *Kinney v. Harrett,* 46 Mich. 87, 8 N. W. 708. The authorities might be greatly extended, but it is unnecessary."

In *Probst v. Trustees, etc.,* 3 N. M. (Johns.) 237, 5 Pac. 702, the second and fifth paragraphs of the syllabus are as follows:

"Nothing can be implied in favor of a wrongdoer who bases his claim on his own wrong. If he seeks to gain an estate by his own hostile acts, without title, he must affirmatively prove existence of all the conditions necessary to the achievement of that result."

"A regularly derived paper title is not necessary for recovery against a defendant who, without title, has intruded upon a prior possession."

In *Slater v. Rawson,* 6 Metc. (Mass.) 439, 445, it is said:

"In an action of *trespass quare clausam fregit,* the defendant can never plead soil and freehold in a third person, without alleging a license from him, because a party having actual possession, but not the right of possession, has a good title against a party having none."

In *Reed v. Price,* 39 Mo. 442, 446, it is said:

"The possession of the plaintiff being conceded, and the defendant claiming no title to the premises or license from the owner to enter, the question is whether evidence of want of title in the plaintiff was admissible. The law has been too long and too well settled to render it necessary to cite authorities in support of the position that possession is sufficient to maintain an action of trespass. In this action the defendant may dispute the plaintiff's possessory right by showing that the title and possessory right are vested in himself or another, under whom he claims, or whose authority he has. But if the plaintiff prove possession merely that will suffice, if the defendant cannot show a superior right in himself or another, under whom he can justify. It is true the plaintiff must prove such a lawful possession as the defendant had no right to disturb, but any possession is a legal possession as against a wrongdoer. *Graham v. Peak,* 1 East, 246; *Lambert v. Strakin,* Willes, 219; *Cottoirs v. Cowper,* 4 Taunt. 546; *Inhabitants of Barnstable v. Thacher,* 3 Metc. [Mass.] 242; *First Parish in Shrewsberry v. Smith,* 14 Pick. [Mass.] 303. In the case last cited, the general principle and reasons upon which the doctrine rests is well stated by Chief Justice Shaw, in delivering the opinion of the court. He says: 'There are many cases

where acts have been done intended to constitute a good and valid title, where grants have been made and titles transferred, but where, through negligence, ignorance, or mistake, especially where corporations, public bodies, and official agents are concerned, such titles cannot be legally proved. Upon a close investigation, a flaw in the title would be discovered. If a lawful owner, in whom the legal title remains, chooses to interfere and set up his legal claims, the law, in consistency with its own rules in regard to the transmission of title, may be compelled to admit his claim. But if such owner, upon considerations of propriety, equity, and conscience, chooses to acquiesce and permit the party in possession to retain that possession, notwithstanding any defect of title, by what rule of law, of equity, or of sound policy can a mere stranger be allowed to interfere, and by his own act violate the actual and peaceable possession of another, and thereby compel him to disclose a title, in the validity or invalidity of which such stranger has no interest?' "

In *Duncan v. Potts,* 5 Stew. & P. (Ala.) 82, 24 Am. Dec. 766, 767, it is said:

"But it is not only here, but elsewhere, that many may be found in the occupancy of lands to which they can show no legal title; and wherever this is the case, if prior peaceable possession did not give a preference in the right of enjoyment, the same consequences would arise. This is the reason of the common law that any possession is sufficient to sustain trespass against a wrongdoer, or a person who cannot make out a title *prima facie* entitling him to possession. It is held that 'a tenant for years, a lessee at will, and a tenant at sufferance, may support this action against a stranger, or even against his landlord, unless a right of entry be expressly or impliedly reserved.' 1 Chit. Pl. 178, and authorities. Also it is said: 'The action of *trespass vi et armis* is termed a possessory action, to distinguish it from those actions in which the plaintiff must show a title. Being founded on an injury to the possession, it is essential that the plaintiff should be in possession of the close at the time when the injury is committed; but, as against a stranger or wrongdoer, it is immaterial whether such possession be founded on a good title or not. Even a tortious possession will support trespass against a wrongdoer.' 2 Wheat. Selw. 1018. Various other authorities to the same effect might be cited, but the principle is considered too clear to require it."

Other cases supporting the position which we take are: *Gulf, C. & S. F. R. Co. v. Johnson,* 54 Fed. 474, 4 C. C. A. 447; *Larue*

*v. Russell,* 26 Ind. 386; *Nicol v. Illinois Cent. R. Co.,* 44 La. Ann. 816, 11 South. 34; *Evertson v. Sutton,* 5 Wend. (N. Y.) 281, 21 Am. Dec. 217; *Preston v. Robinson,* 24 Vt. 583; *Langdon v. Templeton,* 66 Vt. 173, 28 Atl. 866; *Bass v. West,* 110 Ga. 698, 36 S. E. 244; *Hall v. Deaton,* 68 S. W. 672, 24 Ky. Law Rep. 314; *Mott v. Hopper,* 116 La. 629, 40 South. 921; *Davis v. Alexander,* 99 Me. 40, 58 Atl. 55; *Town of New Windsor v. Stockdale,* 95 Md. 196, 52 Atl. 596; *Sweetland v. Stetson,* 115 Mass. 49; *Dold v. Knudsen,* 70 Neb. 373, 97 N. W. 482; *Clay v. City of St. Albans,* 43 W. Va. 539, 27 S. E. 368, 64 Am. St. Rep. 883.

In view of the uniform holdings in other states, as well as in the Supreme Court of the United States, and that we believe every consideration of justice protects one in possession against the acts of mere trespassers, we cannot follow the decision of the Supreme Court of the territory, and *Williams v. Steinmetz,* 16 Okla. 104, 82 Pac. 986, is overruled on this point.

It is next urged that the cattle in question belonged to the firm of Halton & Holden, and that Holden could not be sued alone, and in support of this proposition *Cox v. Gille Hardware, etc., Co.,* 8 Okla. 483, 58 Pac. 645, *King v. Timmons,* 23 Okla. 407, 100 Pac. 536, and section 5008, Comp. Laws 1909, are cited. Both of the cases, however, deal with contracts of partnerships, and hold that, in an action on contract, one member of the firm cannot be sued without joining the others; and in *Cox v. Gille Hardware, etc., Co.,* the statute referred to is construed as merely declaratory of the common law. While the rule contended for by counsel applies in the case of contracts, we do not think it is applicable in case of torts. Story on Partnership (7th Ed.) par. 167; 1 Bates on Partnership, par. 471; 1 Lindley on Partnership (2d Am. Ed.) p. 667, star page 283.

For the reasons herein stated, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

All the Justices concur.